ORIGINAL

1   C.B. NANDA, In Pro Se
    2005 Palo Verde Ave., Suite 119,
2   Long Beach, CA 90815
    Phone: (714) 999-6565
3   E-mail: cb@coorgusa.com

4

5

6

7

**FILED**

**FEB 15 2017**

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

8               UNITED STATES BANKRUPTCY COURT

9        CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

10

11  In re                                    Case No.: 8:12-bk-23047-MW

12  JEFFREY SUMNER CHILDS,                   (Chapter 7)

13          Debtor.                          **CREDITOR C.B. NANDA'S OBJECTION
                                             TO PROPOSED FORM OF ORDER
14                                           APPROVING SALE AND TRANSFER OF
                                             ASSETS TO SEAN TUCKER AND
15                                           LESLIE TUCKER**

16                                           Date:    January 23, 2017
                                             Time:    2:00PM
17                                           Ctrm:    6C

18

19          COMES NOW C.B. NANDA ("NANDA") and hereby submits this objection to the

20  proposed form of order submitted by SEAN TUCKER and LESLIE TUCKER (the "TUCKERS")

21  approving the sale and transfer of assets to Sean Tucker and Leslie Tucker, lodged on February 9,

22  2017 as Docket Number 578 (the "Proposed Order").  A true and correct copy of the Proposed Order

23  is attached hereto as Exhibit "A".

24          NANDA is a party to, or is a principal in an entity that is a party to, certain adversary

25  proceedings pending in the above-captioned case. Those adversary proceedings include a §523 non-

26  dischargeability action against Debtor JEFFREY SUMNER CHILDS ("Debtor"), two actions

27  initiated by Nanda and entities of which Nanda is a principal in the Orange County Superior Court—

28  which actions were removed to this Court by Chapter 7 Trustee Jeffrey I. Golden (the "Trustee")—

1

OBJECTION TO PROPOSED ORDER

1  one against the Debtor and one against the TUCKERS, and two adversary actions initiated against

2  NANDA by the Trustee.

3      The Proposed Order and together with the attached Asset Purchase Agreement (the "APA")

4  contains several terms to which NANDA hereby objects:

5      1.    The Proposed Order contains the following language on page 4, lines 4-7 thereof:

6  "IT IS FURTHER ORDERED *that the sale and transfer of the Assets is free and*

7  *clear of all liens, claims, encumbrances and interests pursuant to 11 U.S.C. § 363(e)*

8  **and that the Tuckers shall not have any personal liability for any judgment**

9  **arising from the resolution of the disputes, causes of action and claims for relief**

10  **set forth in the Assets."** (Emphasis added)

11      (a)    The above language set off in bold text is ambiguous as to the scope of the purported

12  release of the TUCKERS. NANDA has no objection to the TUCKERS obtaining a release of

13  liability to the Estate with respect to the acquired Estate assets. However, NANDA does object to

14  the Proposed Order to the extent it purports to exonerate the TUCKERS from any personal liability

15  to NANDA or any entity of which NANDA is a principal or to limit or effect a release of any claims,

16  causes of action or other rights of NANDA or any entity of which NANDA is a principal in favor of

17  the TUCKERS. NANDA submits that any release of liability of the TUCKERS to NANDA or any

18  entity of which NANDA is a principal either directly or derivatively is beyond the scope of the relief

19  that can be granted by the Court in connection herewith and is, in any event, without adequate notice

20  to NANDA.

21      (b)    The above language set off in italics is ostensibly pursuant to subdivision (f) and not

22  subdivision (e) of 11 U.S.C. § 363. The application of subsections (1), (2), (3), (4) and/or (5) of

23  subdivision (f) of 11 U.S.C. § 363 has not been determined in any proceeding in this matter, the

24  trustee therefore cannot sell and transfer the Assets free and clear of any liens, claims, encumbrances

25  and interests pursuant to 11 U.S.C. § 363 (f), and the purported sale of the Assets free and clear of

26  any liens, claims, encumbrances and interests is beyond the scope of the relief that can be granted by

27  the Court in connection herewith and is, in any event, without adequate notice to NANDA.

28  ///

OBJECTION TO PROPOSED ORDER

2.    The APA attached to the Proposed Order includes in the list of Assets to be transferred to the TUCKERS one of the two above-described state court actions initiated in the Orange County Superior Court by Nanda and Triple Nine Plus Fine Land And Mining Company ("TNPF") against the Debtor which action was removed to this court by the Trustee (the "Removed Childs Action"). NANDA objects to the Proposed Order to the extent it purports to transfer the Removed Childs Action to the TUCKERS. Debtor is a Defendant in the Removed Childs Action and the Removed Childs Action is not an asset of the Debtors' Estate capable of being transferred by the Trustee. NANDA further objects to the purported transfer of the Removed Childs Action on the grounds that the Court lacks the jurisdiction to approve a transfer to the TUCKERS of Childs' interest as a Defendant in the Removed Childs Action. For clarity's sake, NANDA does not object to the transfer of Debtor's interest in TNPF as Plaintiff in the Removed Childs Action, whatever that interest might be, if any.

3.    Paragraph 5 of the APA provides in pertinent part that "The Tuckers shall not be required to remediate any environmental issues associated with the Mining Claims in order to sell the Mining Claims or otherwise....The Estate shall have no liability for any environmental remediation related to the Mining Claims." To the extent that the foregoing provisions may purport to limit or eliminate the TUCKERS' and/or the Estate's liability or obligation to any third parties, including NANDA or any entity of which NANDA is a principal either directly or derivatively, to remediate any environmental issues associated with the Mining Claims, such provisions are beyond the scope of the relief that can be granted by the Court in connection herewith and are, in any event, without adequate notice to NANDA.

Respectfully submitted,

DATED: February 15, 2017

By: _____
        C.B. NANDA

3

OBJECTION TO PROPOSED ORDER

**EXHIBIT A**

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| James I. Stang (CA Bar No. 94435)<br>PACHULSKI STANG ZIEHL & JONES LLP<br>10100 Santa Monica Blvd., 13th Floor<br>Los Angeles, CA 90067<br>Telephone: 310/277-6910<br>Facsimile: 310/201-0760<br>Email: jstang@pszjlaw.com<br><br>☐ Individual *appearing without an attorney*<br>☒ Attorney for: Sean Tucker and Leslie Tucker | |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| In re:<br><br>JEFFREY SUMNER CHILDS,<br><br><br><br><br><br>Debtor(s) | CASE NO.: 8:12-bk-23047-MW<br><br>CHAPTER: 7<br><br>**NOTICE OF LODGMENT OF ORDER IN BANKRUPTCY CASE RE:** *(title of motion[1])*:<br>**NOTICE OF SALE OF ESTATE PROPERTY**<br><br>**[Docket Nos. 450, 452]** |
|---|---|

PLEASE TAKE NOTE that the order titled **ORDER APPROVING SALE AND TRANSFER OF ASSETS TO SEAN TUCKER AND LESLIE TUCKER**

was lodged on *(date)* 02-09-2017 _____ and is attached hereto as Exhibit A. This order relates to the Motion which is docket number **450**.

---
[1] Please abbreviate if title cannot fit into text field.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2012*                    Page 1                    **F 9021-1.2.BK.NOTICE.LODGMENT**
DOCS_LA:303996.1 85443/001

EXHIBIT A

1  James I. Stang (CA Bar No. 94435)
   Pachulski Stang Ziehl & Jones LLP
2  10100 Santa Monica Blvd., 13th Floor
   Los Angeles, CA  90067
3  Telephone:  310/277-6910
   Facsimile:  310/201-0760
4  E-mail:        jstang@pszjlaw.com

5
   Attorneys for Sean Tucker and Leslie Tucker
6

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                  **SANTA ANA DIVISION**

11  In re                                    Case No.: 8:12-bk-23047-MW

12  JEFFREY SUMNER CHILDS,                   Chapter 7

13            Debtor.                        **ORDER APPROVING SALE AND**
                                             **TRANSFER OF ASSETS TO SEAN**
14                                           **TUCKER AND LESLIE TUCKER**

15                                           Hearing:
                                             Date:    January 23, 2017
16                                           Time:    2:00 p.m.
                                             Place:   Courtroom 6C
17                                                    U.S. Bankruptcy Court
                                                      411 West Fourth Street
18                                                    Santa Ana, CA 92701

19        The auction for the sale of assets pursuant to the *Order Granting Motion to Approve*

20  *Compromise Between Jeffrey I. Golden and C.B. Nanda Pursuant to Fed. R. Bankr. P. 9019 And*

21  *Sale Of Disputed Interest In Mining Claims Pursuant to 11 U.S.C. 363* (the "Compromise

22  Order") [Docket Entry ("D.E.") 471] and the *Notice of Sale of Estate Property* (D.E. 452) came

23  on for hearing on January 23, 2017, at 2:00 p.m., in courtroom 6C of the above-referenced court,

24  the Honorable Mark S. Wallace presiding.  Appearances were made as stated on the record.[1]

25

26

27  ─────────────────
    [1] Capitalized terms that are not defined herein are defined in the *Motion to Approve Compromise between Jeffrey I. Golden and C.B. Nanda pursuant to Fed. R. Bankr. P. 9019 and Sale of Disputed Interest in Mining Claims pursuant*
28  *to 11 U.S.C. § 363* (D.E. 450).

                                             ORDER APPROVING SALE AND TRANSFER OF
                                             ASSETS TO SEAN TUCKER AND LESLIE TUCKER

DOCS_LA:303650.10 85443/001

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1      On January 6, 2017, this Court entered its *Order Granting In Part And Denying In Part*

2  *Motion To Approve Sean Tucker And Leslie Tucker As Qualified Bidders And As Entitled To*

3  *Credit Bid* (the "Credit Bid Order")(D.E. 566) setting forth the requirements to qualify as bidders

4  at the auction. As of the commencement of the auction, Sean Tucker and Leslie Tucker (the

5  "Tuckers") qualified as bidders for the assets based on their *Revised Asset Purchase Offer And*

6  *Revised Qualified Overbid of Sean and Leslie Tucker* (D.E. 576) (the "Revised Asset Purchase

7  Offer")(D.E. 576)(which bid $425,000 for the assets) and the Tuckers' personal delivery to the

8  Trustee of a $75,000 deposit in the form of a cashier's check payable to Jeffrey I. Golden (the

9  "Trustee") as chapter 7 trustee of the Jeffrey Sumner Childs bankruptcy estate (the "Estate").

10  C.B. Nanda and Ilona Nanda and the Nanda Parties (collectively, the "Nandas") submitted a final

11  all-cash bid of $435,000 on the terms and conditions set forth in the *Motion to Approve*

12  *Compromise between Jeffrey I. Golden and C.B. Nanda pursuant to Fed. R. Bankr. P. 9019 and*

13  *Sale of Disputed Interest in Mining Claims pursuant to 11 U.S.C. § 363* and C.B. Nanda's

14  declaration attached to the *Notice Of Motion And Motion To Reset Hearings Relating To The Sale*

15  *Of Estate Property And Notice Of Qualified Overbid; Memorandum Of Points And Authorities;*

16  *Declarations In Support Thereof* (D.E. 523), except that the cash would be paid up front at

17  closing. The Court denied the Nandas' oral motion seeking the right to credit bid their alleged

18  claims secured by the Mining Claims. The Tuckers submitted a final bid of $765,000 for the

19  Assets, as defined in the Asset Purchase Agreement consisting of $75,000 cash in the form of the

20  cashier's check payable to the Trustee and personally delivered to the Trustee before the

21  commencement of the hearing, $325,000 payable pursuant to paragraph 4.1 of the Revised

22  Purchase Offer and a credit bid of $365,000 which was treated as cash pursuant to the Credit Bid

23  Order. The Tuckers agreed to modify their Revised Asset Purchase Offer to provide that the sale

24  and transfer of the assets was on an "AS IS, WHERE IS" basis, without any representations or

25  warranties except as set forth in the Asset Purchase Agreement and  subject to the Trustee's

26  reasonable efforts to deliver to the Tuckers the assets described in paragraph 3(g) thereof. The

27  Tuckers acknowledged the Trustee's statement that he will be moving to close the bankruptcy

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

ORDER APPROVING SALE AND TRANSFER OF
ASSETS TO SEAN TUCKER AND LESLIE TUCKER

1   case upon the closing of the sales and transfers contemplated by the Revised Asset Purchase

2   Offer, subject to a reservation of the Court's jurisdiction over the litigation described in the

3   Revised Asset Purchase Offer. The Trustee recommended the Court approve the Nandas' bid.

4   The Court, having considered the foregoing facts, the pleadings filed in this bankruptcy case, the

5   argument of counsel and the parties appearing at the January 23, 2017 auction, the Nandas' and

6   Tuckers' qualifying bids, the Credit Bid Order, 11 U.S.C. §363, including §§363(b), (k) and (m)

7   and that the cash portion of the Tuckers' bid exceeded the Nanda's cash bid, the Court finds that

8   the Asset Purchase Agreement attached hereto as Exhibit A (the "Asset Purchase Agreement")

9   and incorporated herein by reference is consistent with the Revised Asset Purchase Offer and that

10   both satisfy the requirements of the Bankruptcy Code (11 U.S.C. § 101, *et seq.*), the Federal rules

11   of Bankruptcy Procedure and the Local Bankruptcy Rules, that the Tuckers are good faith

12   purchasers as defined by 11 U.S.C. § 363(m), that the Trustee is not required to perform any

13   duties or obligations under the Compromise Order because there is no "Effective Date" as

14   provided in the Compromise Order as a consequence of the Tuckers outbidding the Nanda Parties

15   at the January 23, 2017 auction, and good cause appearing therefore,

16       IT IS HEREBY ORDERED that the Revised Asset Purchase Offer and the Asset Purchase

17   Agreement are approved and effective, subject to the Tuckers' modifications of the Revised Asset

18   Purchase Offer set forth on the record of the January 23, 2017 auction hearing, and that the

19   Trustee is authorized and directed to sell and the transfer the Assets on the terms and conditions

20   of the Asset Purchase Agreement, incorporated herein by reference;

21       IT IS FURTHER ORDERED that the Tuckers' secured claim against the Estate in the

22   above-referenced case is reduced by the sum of $365,000, leaving a balance not less than

23   $2,011,372.96;[2]

24

25

26

27   [2] This order is without prejudice to the Tuckers' claim pursuant to the *Judgment Of Nondischargeability Of Debt In Favor Of Sean P. Tucker And Leslie A. Tucker* (D.E. 48) in *Sean P. Tucker and Leslie A. Tucker v. Jeffrey Sumner Childs*, Adv. No. 8:13-ap-01094-MW.

28

- 3 -

ORDER APPROVING SALE AND TRANSFER OF
ASSETS TO SEAN TUCKER AND LESLIE TUCKER

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    IT IS FURTHER ORDERED that the Court retains jurisdiction to determine the Tuckers'

2  entitlement to post petition interest on their secured claim against the Estate; notwithstanding any

3  order closing the bankruptcy case;

4    IT IS FURTHER ORDERED that the sale and transfer of the Assets is free and clear of all

5  liens, claims, encumbrances and interests pursuant to 11 U.S.C. § 363(e) and that the Tuckers

6  shall not have any personal liability for any judgment arising from the resolution of the disputes,

7  causes of action and claims for relief set forth in the Assets;

8    IT IS FURTHER ORDERED that the Trustee's recommendation to approve the Nandas'

9  bid is denied;

10    IT IS FURTHER ORDERED that the Trustee is not authorized to accept the Nandas'

11  offer except as a back-up offer if the Tuckers fail to close the transaction evidenced by the Asset

12  Purchase Agreement and

13    IT IS FURTHER ORDERED that upon the closing of the Asset Purchase Agreement, the

14  Trustee is released from any duties, promises and obligations to the Nanda Parties under the

15  Compromise Order and that the Nanda Parties are released from any duties, promises and

16  obligations to the Trustee under the Compromise Order as the transactions contemplated by the

17  Compromise Order are not approved or authorized, except as an accepted back-up offer

18  enforceable upon the Tuckers failure to close the Asset Purchase Agreement.

19    **IT IS SO ORDERED.**

20                          ###

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

ORDER APPROVING SALE AND TRANSFER OF
ASSETS TO SEAN TUCKER AND LESLIE TUCKER

DOCS_LA:303650.10 85443/001

**EXHIBIT A**

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (the "Agreement")) is made as of February 9, 2017, by and between Sean P. Tucker and Leslie A. Tucker (the "Tuckers"), on the one hand, and Jeffrey I. Golden (the "Trustee" or "Golden"), in his capacity as chapter 7 trustee for the bankruptcy estate (the "Estate") in the bankruptcy case styled *In re Jeffrey Sumner Childs*, case number 8:12-bk-23047-MW (the "Bankruptcy Case"), pending in the United States Bankruptcy Court for the Central District of California (the "Court"), on the other hand. The Trustee and the Tuckers may be referred to herein collectively as the "Parties" and each individually as a "Party".

### RECITALS

**WHEREAS**, on or about July 5, 2005, Jeffrey Sumner Childs ("Childs"), the debtor in the Bankruptcy Case, entered into an Option Agreement (the "Option Agreement") with Mines Exploration, Inc. ("MinesX"), pursuant to which MinesX granted Childs, under the alleged d/b/a Triple Nine Plus Fine Land and Mining Company, the exclusive right to purchase certain patented and unpatented mining claims located in San Bernardino and Kern Counties, in the State of California;

**WHEREAS**, C,B, Nanda and Ilona Nanda (collectively "Nanda"), individually and on behalf of Triple Nine Plus Fine Land And Mining Company, LLC ("TNPF"), a Nevada limited liability company, Triple Nine Kelly, LLC ("TNK"), a California limited liability company, RMDG, LLC ("RMDG"), a California limited liability company, Coorg Corporation ("Coorg"), a California corporation, DGRM, LLC ("DGRM"), a Nevada limited liability company, Indon, LLC ("Indon"), a Nevada limited liability company, Kiman, LLC ("Kiman"), a Nevada limited liability company, Elemo, LLC ("Elemo"), a Nevada limited liability company, Yevan, LLC ("Yevan"), a Nevada limited liability company, OXYMA, LLC ("Oxyma"), a Nevada limited liability company, Wattz, LLC ("Wattz"), a Nevada limited liability company, Uratin, LLC ("Uratin"), a Nevada limited liability company, and any and all other entities owned or controlled by Nanda asserting any interest in the Assets (defined *infra*), and any and all other entities owned or controlled by Nanda asserting any interest in the Assets may be referred to herein collectively as the "Nanda Entities" and each individually as a "Nanda Entity". Nanda, and the Nanda Entities may be referred to herein collectively as the "Nanda Parties" and each individually as a "Nanda Party".

**WHEREAS**, on or about March 7, 2006, TNPF entered into an Asset Purchase & Option Agreement (the "Purchase Agreement") with MinesX, with Childs and Nanda as the guarantors, to acquire certain patented and unpatented mining claims located in San Bernardino and Kern Counties, in the State of California (the "Mining Claims");

**WHEREAS**, Nanda alleges that the Purchase Agreement is entirely unrelated and separate from the Option Agreement;

**WHEREAS**, Nanda alleges that on or about March 8, 2006, TNPF was created in the State of Nevada;

**WHEREAS**, on or about March 9, 2006, Nanda and Childs entered into the "Agreement for Triple Nine Plus Fine Land and Mining Company, L.L.C." (the "TNPF Agreement"), pursuant to which Nanda and Childs agreed that title to the Mining Claims would be held by TNPF and that the following parties would hold the specified ownership interests in TNPF:

| | |
|---|---|
| Gold Nugget Church, a non-profit charity | 27.50% |
| Jeff Childs | 16.50 |
| C.B. Nanda | 40.00% |
| Bob | 2.00% |
| Cyclist | 2.50% |
| Bullion dealer #1 | 0.50% |
| Bullion dealer #2 | 0.50% |

**WHEREAS**, the Trustee alleges that following the acquisition of the Mining Claims and formation of TNPF, Nanda contested any interest asserted by Childs in TNPF and the Mining Claims, and transferred certain Mining Claims and/or interests in certain Mining Claims to one or more of the Nanda Entities;

**WHEREAS**, Nanda alleges that on or about March 27, 2007, TNK was created in the State of California;

**WHEREAS**, Nanda alleges that on or about July 2, 2007, Triple Nine Plus Charity was created in the State of California as a religious nonprofit corporation which is the referenced "Gold Nugget Church, a non-profit charity" in the TNPF Agreement;

**WHEREAS**, the Tuckers are the party which is the referenced "Cyclist" in the TNPF Agreement;

**WHEREAS**, in or about July 2009, Nanda, individually, TNPF, and Triple Nine Plus Charity filed a lawsuit (the "State Court Action") in the California Superior Court (the "State Court"), pursuant to which Nanda and/or TNPF asserted causes of action against Childs relating to the acquisition of the Mining Claims and formation of TNPF, including (a) breach of oral contract, (b) fraud, (c) breach of written contract, (d) intentional infliction of emotional distress, and (e) declaratory relief. Pursuant to a demurrer filed by Childs, the Superior Court dismissed all causes of action except the causes of action for fraud (b) and intentional infliction of emotional distress (d);

**WHEREAS**, on or about November 13, 2012 (the "Petition Date"), Childs filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code");

**WHEREAS** upon the commencement of the Bankruptcy Case, any interest that Childs may have in the Mining Claims and in the Nanda Parties became property of the Estate and, as such, the Trustee has authority to dispose of Childs' interest in the Mining Claims and the Nanda Parties, subject to Court approval;

2

**WHEREAS,** following the commencement of the Bankruptcy Case, Golden was appointed as chapter 7 trustee for the Estate and has henceforth served in that capacity;

**WHEREAS,** on or about March 8, 2013, Nanda, individually, and TNPF, filed an adversary complaint in the Court styled *Triple Nine Plus Fine Land and Mining Company, LLC, etal. v. Childs, et al,* adversary number 8:13-ap-01096-MW (the "523 Adversary"), pursuant to which Nanda and/or TNPF sought a finding that, among other things, any damages awarded against Childs in the State Court Action were non-dischargeable under section 523 of the Bankruptcy Code and that the Estate did not hold any interest in any Nanda Entity or the Mining Claims;

**WHEREAS,** on or about October 3, 2013, Nanda and TNPF collectively filed proof of claim 1-1 (the "TNPF POC"), pursuant to which Nanda and TNPF assert a $4,400,000 claim against the Estate based upon the alleged misconduct and tortious conduct of Childs purported perpetrated in the course of the acquisition of the Mining Claims and formation of TNPF, which claims are the subject of the State Court Action;

**WHEREAS,** on or about November 18, 2013, the Trustee removed the State Court Action, which is now pending before the Court as adversary proceeding number 8:13-ap-01390- MW (the "Childs Adversary");

**WHEREAS,** on or about April 1, 2014, the Trustee filed an adversary complaint in the Court against the Nanda Parties styled *Golden v. Nanda, et al,* adversary number 8:14-ap-01108-MW (the "Nanda POC Adversary"), pursuant to which the Trustee sought an order disallowing the Nanda POC in its entirety;

**WHEREAS,** on or about May 2, 2014, the Trustee filed an adversary complaint in the Court styled *Golden v. Nanda, et al.,* adversary number 8:14-ap-01135-MW (the "Nanda Fraud Adversary"), pursuant to which the Trustee sought, among other things, a finding that the Estate held an interest in TNPF and the Mining Claims, and an order voiding the transfers of the Mining Claims to Nanda Entities other than TNPF;

**WHEREAS,** the Trustee moved to approve a compromise with the Nanda Parties to resolve The 523 Adversary, the Childs Adversary, the Nanda POC Adversary, and the Nanda Fraud Adversary (collectively, the "Adversary Proceedings") and the Bankruptcy Court entered an order approving the compromise (Docket No. 471) wherein the Bankruptcy Court ordered that the Trustee should conduct an overbid auction and that the Effective Date of the compromise was related to the Court's approval of the auction bid by the Nanda Parties and the Trustee filed and served a *Notice of Sale of Estate Property* (Docket No. 452);

**WHEREAS,** the Bankruptcy Court granted the Tuckers the right to credit bid at the auction pursuant to its *Order Granting In Part and Denying in Part Motion To Approve Sean Tucker and Leslie Tucker As Qualified Bidders And As Entitled To Credit Bid* (Docket No. 566);

**WHEREAS,** the Bankruptcy Court determined that the Tuckers were qualified over bidders on the basis of their *Revised Asset Purchase Offer and Revised Qualified Overbid of*

3



*Sean and Leslie Tucker* (Docket No. 576) and the delivery of a $75,000 cashier's check to the Trustee;

**WHEREAS,** the Tuckers outbid the Nanda Parties at the auction conducted before the Bankruptcy Court on January 23, 2017 and the Bankruptcy Court approved the Tuckers' overbid for certain assets and disapproved the Nanda Parties' bid, except as the Nanda Parties bid of $435,000 up front cash as a back-up bid to the Tuckers' bid;

The Parties hereby agree as follows:

1.      **COURT APPROVAL.** The Agreement shall not be binding unless and until the Court enters the final order[1] attached hereto as Exhibit A and incorporated herein by reference. The date on which the order attached as Exhibit A becomes a final order or the date on which the Tuckers waive the finality of the order as a condition to this Agreement is referred to herein as the "Effective Date".

2.      **TRANSFER OF ESTATE'S INTEREST.** The Trustee hereby agrees to convey on an AS IS, WHERE IS basis, without any representations or warranties except as expressly set forth herein, any and all rights, title and interests the Estate may have in:

(a)      the Estate's interest in the Nanda Parties and any successors in interest to the Nanda Parties;

(b)      any or all of the Mining Claims;

(c)      the State Court Action and the Childs Adversary;

(d)      the Nanda POC Adversary;

(e)      the Nanda Fraud Adversary;

(f)      all legal and equitable rights of the Estate to be awarded sanctions against any third party and

(g)      All documents, communications and work product (including all documents and work product prepared by the Trustee and his professionals relating to any discovery that the Trustee prepared and/or propounded against the Nanda Parties) and excluding documents, communications and work product that are subject to the attorney-client privilege, prepared by or received by the Trustee and his professionals relating to any of the Assets, including such documents and work product in Word format, if available; provided that the Trustee is required to exercise reasonable efforts to deliver possession of the foregoing to the Tuckers and is

---

[1] An order shall be a "final order" *provided that* (a) no timely appeal has been filed challenging the order or, (b) if a timely appeal has been filed, no order staying the effect of the order has been requested or entered. A notice of appeal shall be deemed timely if filed within the time allotted under Rule 8002 of the Bankruptcy Rules. The Tuckers have the right, in their sole and absolute discretion, to waive the condition of the entry of a final order.

4

required to deliver possession of the foregoing within fifteen (15) calendar days of the Effective Date

(collectively subparagraphs (a)-(g), the "Assets")

The conveyance of the Assets shall be effective as of the Effective Date. The Trustee shall execute and deliver to the Tuckers any and all documents necessary to effectuate the conveyance of the Assets to the Tuckers or their designee (the "Asset Transfer Documents"); *provided, however,* that the Asset Transfer Documents must be in a form and of a quality reasonably acceptable to the Trustee. The Trustee shall review the Asset Transfer Documents in a timely manner and, if something is unacceptable within such documents, the Trustee shall object to unacceptable provision(s) within five (5) business days from delivery of the Asset Transfer Documents by the Tuckers to the Trustee; any objection that is not delivered to the Tuckers within said five (5) business days is deemed waived by the Trustee. The Bankruptcy Court shall have jurisdiction to approve the form of the Asset Transfer Documents and to order the Trustee to execute and deliver the Asset Transfer Documents to the Tuckers. The Tuckers shall be solely responsible for the preparation of any necessary documents and any and all costs associated with the conveyance of any and all of the rights, title and/or interests of the Estate in the Assets.

3. **PURCHASE PRICE**.

The total purchase price of the Assets is $765,000 payable as follows:

3.1 **Cash Payment**

(a) On or before the tenth (10th) day following the execution of the Asset Transfer Documents, the Tuckers shall pay the Trustee an initial payment in the amount of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) (the "Initial Payment"). The Trustee shall apply the $75,000 cashiers' check personally delivered by the Tuckers to the Trustee at the January 23, 2017 auction to qualify as bidders to satisfy this payment obligation;

(b) On or before the one hundred and eightieth (180th) day following the Effective Date[2], the Tuckers shall pay the Estate a second payment in the amount of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.000); and

(c) Commencing no later than two hundred seventy (270) calendar days following the Effective Date, the Tuckers shall commence making periodic payments to the Estate in the amount of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) per every three (3) months and shall continue until the Guaranteed Payment along with any interest,

---

[2] The Agreement uses the term "Estate" in instances where the Bankruptcy Case may have been closed and then re-opened, with a different trustee appointed. Use of the term "Estate" is not intended to modify the Tuckers' rights or obligations and the trustee in the re-opened Bankruptcy Case is bound by all terms and conditions of the Agreement.



5

penalties and/or fees provided for under this Agreement are paid in full. Such payments shall be due on the fifteenth (15th) day of the 9th, 12th, 15th, 18th, 21st, 24th, 27th, 30th, 33rd, and 36th month after the Effective Date.

In the event of a sale of the Mining Claims, any unpaid balance due on account of the Guaranteed Payment must be paid in full from escrow on the close of such sale.

3.2. **Credit Bid Payment.** By virtue of Tuckers' credit bid of $365,000 of their secured claim at the January 23, 2017 auction, as of the Effective Date the Tuckers have paid the Trustee the additional sum of $365,000.

4.      **ADDITIONAL PAYMENT BASED ON RECEIPT OF PROCEEDS.** Commencing on the Effective Date and continuing for a term of no less than five (5) calendar years after the Effective Date (the "Proceeds Receipt Period"), the Tuckers, shall pay to the Estate eight percent (8%) of any proceeds from the Assets received by the Tuckers or any entity one or both of the Tuckers control or in which one or both of the Tuckers holds any interest, whether it be by and through litigation with the Nanda Parties, a sale of the Tuckers interest in the Mining Claims to Childs, the Nanda Parties, or any third party, a cash settlement with the Nanda Parties to settle the litigation that is the primary subject of the Assets only, a purchase of the Assets by Childs, the Nanda Parties, or any third party or from the gross receipts resulting from the processing of the tailings related to the Mining Claims.

To the extent that the Tuckers have a secured claim against the Estate (regardless of whether the case is closed), the amount of the secured claim may be used, in lieu of cash, to pay a portion or the entire amount due under this paragraph. If the Estate and the Tuckers have a dispute regarding the amount of the Tuckers' secured claim, the Court shall conduct a hearing on notice to determine the amount of the secured claim that may be used, in lieu of cash, to pay the amount due under this paragraph. To the extent that the Tuckers' secured claim is insufficient to pay the amount due under this paragraph, the Tuckers shall pay the difference between the amount due under this paragraph and the Tuckers' secured claim in cash no later than thirty (30) calendar days after the close of escrow.

5.      **REMEDIATION.** The Tuckers shall not be required to remediate any environmental issues associated with the Mining Claims in order to sell the Mining Claims or otherwise; however, to the extent that the Tuckers undertake remediation, the Tuckers shall pay for remediation without cost to the Estate. At Tuckers' sole discretion, they can release any partial or total interest in the Mining Claims in order to satisfy remediation or environmental issues or other demands made by governmental agencies; *provided, however,* the Tuckers offer to surrender the Mining Claims to the Estate without consideration prior to abandoning the Mining Claims in whole or in part or applies any consideration or compensation received as part of his release of the Mining Claims towards the Cash Payment. The Estate shall have no liability for any environmental remediation related to the Mining Claims.

6.      **SECURITY INTEREST.** The Cash Payment shall be secured by the Assets and the Estate shall be authorized to perfect any and all security interests granted hereunder by whatever means necessary. This security interest shall only be against the Assets. The

6



Tuckers shall cooperate with and assist the Estate, to the extent necessary and that they are legally able, in his efforts to perfect the security interests under this Agreement, including, without limitation, executing any documentation necessary for the Estate to perfect the security interest. Upon receipt of the Cash Payment in full, the Estate shall cancel, withdraw or otherwise terminate any liens or encumbrances in the Assets.

7.   **RELEASES.**

   (a)   Tucker Release. Except for the obligations under this Agreement, the Subordination Agreement or as otherwise provided herein, the Trustee, on behalf of the Estate, shall release, remise, acquit, exonerate and forever discharge each of the Tuckers and each of their successors, predecessors, assigns, agents, professionals, and affiliates of and from any and all claims, acts or omissions arising between them, whether now known or unknown, anticipated or unanticipated, suspected or unsuspected, which the Estate had, has or may have against the Tuckers, or any of them, whether now known or unknown, anticipated or unanticipated, suspected or unsuspected, which the Estate or Trustee had, has or may have against any of the Tuckers. In so doing, the Trustee, on behalf of the Estate, has had the benefit and advice of counsel, or the opportunity to consult with counsel and has voluntarily chosen not to do so, and hereby knowingly and intentionally waives any right(s) under California Civil Code section 1542, or any analogous or similar law, which provides as follows:

   A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

   The release provided under this Paragraph 7.a. shall be effective upon the Trustee's receipt of the Initial Payment. Upon the completion of any and all payments due under this Agreement, the Estate shall, if the Tuckers so desire, execute a broad release from any and all liability. In order for such release to be effective, the release must be set forth in writing and executed by all affected Parties. The release(s) provided under this Paragraph 7.a., including the release under California Civil Code section 1542, shall be enforceable in any court of law or equity without respect to the laws generally applicable in such court. The laws of the State of California shall apply to the application, interpretation, and enforceability of the release provided under this Paragraph 7.a.

   (b)   Estate Release. Except for the obligations under this Agreement, the right to object to professionals' and the Trustee's applications for fees and

7




costs or as otherwise provided herein, the Tuckers, and each of them, and their past, present and future agents, successors, assigns and subsidiaries and any other individual or entity who claim by, through or under them, shall release, remise, acquit, exonerate and forever discharge the Trustee and Estate and their successors, predecessors, assigns, agents, and professionals, of and from any and all claims, acts or omissions arising between them, whether now known or unknown, anticipated or unanticipated, suspected or unsuspected, which the Tuckers, or any of them, had, has or may have against the Estate, in any way, shape or form whether now known or unknown, anticipated or unanticipated, suspected or unsuspected, which the Tuckers had, has or may have against the Estate. In so doing, the Tuckers have had the benefit and advice of counsel, or the opportunity to consult with counsel and have voluntarily chosen not to do so, and hereby knowingly and intentionally waive any right(s) under California Civil Code section 1542, or any analogous or similar law, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The release provided under this Paragraph 7.b. shall be effective upon the Trustee's receipt of the Initial Payment. The release provided under this Paragraph 7.b., including the release under California Civil Code Section 1542, shall be enforceable in any court of law or equity without respect to the laws generally applicable in such court. The laws of the State of California shall apply to the application, interpretation, and enforceability of the release provided under this 7.b.

Nothing whatsoever in this document shall be construed to be the Tuckers releasing the Nanda Parties in any way whatsoever.

8.    **DEFAULT**.  The failure by the Tuckers to make any payment required under this Agreement, within ten (10) calendar days of the date such payment is due shall constitute an event of default. Upon the occurrence of an event of default, the Estate shall provide written notice of default to the Tuckers in accordance with Paragraph 19 of this Agreement. The Tuckers may cure the default by payment the amounts owing to the Estate plus a FIVE HUNDRED DOLLAR ($500.00) late fee within ten (10) calendar days of the notice of default. For instance, if the Tuckers fail to make a periodic payment in accordance with Paragraph 3.1(c) of this Agreement, the Tuckers could cure the default by paying the Estate the sum of TWENTY FIVE THOUSAND FIVE HUNDRED DOLLARS ($25,500.00) no later than ten (10) calendar days of the date of the notice of default. The failure to cure any default within the time provided constitutes a material breach of the Agreement. The Estate in its sole and absolute discretion may permit the Tuckers to cure a material breach. The

8

parameters and circumstances under which any material breach may be cured will be determined in the sole and absolute discretion of the Estate. A request for authority to cure a material breach must be submitted in writing to the Estate. Upon the occurrence of a material breach, the unpaid balance under the Agreement shall be immediately due and owing and shall bear interest at the rate of seven percent (7.0%) *per annum*, and the Estate shall be authorized to immediately use any and all available remedies to collect the unpaid balance under the Agreement, including, without limitation, foreclosing on or monetizing the security interest in the Assets.

If the Estate is unable to foreclose on any or all of the Assets for any reason following a material breach of the Agreement, the Tuckers agree to voluntarily transfer to the Estate Assets valued at no less than the amount owing under this Agreement at the time of the transfer. Such transfer shall be free and clear of any and all liens, claims, interests, liabilities and/or encumbrances, and the Tuckers shall deliver clean and marketable title to the subject Assets. To value the subject Assets, the Parties shall select and retain a qualified appraiser to appraise and value of any Mining Claims the Tuckers may propose transferring. If the Parties are unable to agree on a qualified appraiser, the Parties shall each propose one appraiser and the Bankruptcy Court shall select one of the proposed appraisers to conduct the appraisal. The valuation prepared by the appraiser selected shall be final for the sole purpose of satisfying any outstanding obligations pursuant to this paragraph.

9.  **DISPUTE RESOLUTION**. In the event of a dispute regarding the duties and/or obligations under or compliance of any Party with the terms of the Agreement, the Parties hereby agree to mediate the dispute before a mediator, provided that the mediator shall not be Mitchell Goldberg (the "Mediator"). The decision of the Mediator shall not be binding on the Parties and shall be kept confidential including that it shall not be used or referenced by either Party in any court proceeding. The Parties may file a motion to enforce this Agreement in the Bankruptcy Court, which shall consider the matter *de novo*. In the event a Party seeks to resolve a matter before the Mediator, the Parties shall share the costs relating to the retention of the Mediator equally and otherwise bear their own costs. In the event a Party seeks de novo consideration of the dispute, the Parties shall bear their own costs associated therewith.

10.  **NO TRANSFERS OR ENCUMBRANCES PRIOR TO PAYMENT OF THE CASH PAYMENT**. Prior to paying off the Cash Payment, the Tuckers shall not transfer or encumber the Assets without the Estate's prior written consent, which consent shall not be unreasonably withheld, unless the subject transaction results in payment of any and all amounts owing under this Agreement; *save and except* that the Tuckers may without the Estate's prior written consent sell the Assets in accordance with Paragraph 4 of this Agreement.

From the Effective Date until the expiration of the Proceeds Receipt Period, the Tuckers shall be required to pay any fees or expenses assessed by the California Bureau of Land Management (the "BLM") relating to the Mining Claims (the "BLM Fees") and which accrued during that period and not paid by the Nanda Parties, *provided, however*, that the BLM Fees do not exceed the amount of the BLM Fees assessed in 2015 relating to the Mining Claims plus an increase for inflation not to exceed 10% per year. If the BLM demands payment in excess of the 2015 BLM fees plus an increase for inflation not to exceed 10% per

9

year, within three (3) calendar days of receipt of the subject invoice or payment demand, the Tuckers must provide the Estate with a copy of the subject invoice or payment demand and a notice from the Tuckers that the increased fees and/or expenses exceed a 10% per year increase in the BLM Fees. The failure to provide the Estate with the documentation and notice in accordance with the terms of the preceding sentence shall constitute an admission that the BLM Fees have not exceeded a 10% per year increase. If the Tuckers decide not to pay any amount due and owing to the BLM on account of the Mining Claims pursuant to this paragraph, the Tuckers must provide written notice of such intention no later than fifteen (15) business days prior to the due date of the subject invoice or payment. Failure to provide adequate notice shall obligate the Tuckers to pay any and all amounts owing under the subject invoice. Nothing in this paragraph is intended to relieve Tuckers of their obligations to pay the total amount owing under this Agreement.

11.    **NO IMPLIED WAIVER/ADMISSION.** Except as provided for herein, each Party fully reserves any and all rights, remedies, claims and interests, which rights shall be deemed, for purposes of any future litigation, as existing to no greater and no lesser extent than such rights existed immediately prior to execution of this Agreement. This Agreement shall not constitute an admission that any Party hereto is liable to any other Party hereto in any way for any claim asserted by any Party hereto or counsel to a Party hereto in the dealings and communications between the Parties and/or their counsel which preceded the execution of this Agreement. Each Party hereto denies that it committed any wrongdoing, caused any damage, or is liable to any other Party hereto for any matter or thing.

12.    **HEADINGS.** The headings of all sections of this Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit or aid in the construction or interpretation of any term or provision hereof.

13.    **GOVERNING LAW/FORUM SELECTION.** THIS AGREEMENT IS TO BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF CALIFORNIA APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED IN SUCH STATE, WITHOUT GIVING EFFECT TO THE CHOICE OF LAWS PRINCIPLES THEREOF. By its execution and delivery of this Agreement, each of the Parties hereto hereby irrevocably and unconditionally agrees that any legal action, suit or proceeding with respect to any matter under or arising out of or in connection with this Agreement shall be brought in the Bankruptcy Court. By the execution and delivery of this Agreement, each of the Parties hereto hereby irrevocably accepts and submits itself to the exclusive jurisdiction of the Bankruptcy Court, generally and unconditionally, with respect to any such action, suit or proceeding, and consents to the entry of any final order or judgment by the Bankruptcy Court.

The Parties acknowledge that the Trustee will move to close the Bankruptcy Case and seek a Bankruptcy Court order reserving jurisdiction over the Assets and this Agreement. The Tuckers agree not to object to the closing of the Bankruptcy Case provided that the Bankruptcy Court retains its existing jurisdiction over the Assets and the enforcement of this Agreement and the Trustee has signed and delivered the Asset Transfer Agreements. If the Court does not retain jurisdiction over this Agreement, references in this paragraph to the Bankruptcy Court shall be references to a court of appropriate jurisdiction.

10

14.    **AMENDMENT**. This Agreement may be amended, altered, modified, or otherwise changed in any respect or particular only by a writing duly executed by the Parties hereto or their authorized representatives, and approved by the Court.

15.    **AUTHORITY**. Except to the extent Court approval is required to give effect to this Agreement, the Parties represent and warrant to the others that each has all requisite power and authority to enter into this Agreement and perform its respective obligations. Each signatory represents and warrants to the Parties that he or she has the authority to execute this Agreement on behalf of the Party they purportedly represent and thereby bind such individual or entity to this Agreement.

16.    **COOPERATION**. The Parties shall execute any additional documentation reasonably necessary to effectuate the intent and purposes of this Agreement.

17.    **NO THIRD PARTY BENEFICIARIES**. This Agreement is not intended to benefit any individual or entity other than the Estate and shall not confer upon any person or entity, other than the Trustee and the Estate, any rights or remedies.

18.    **SUCCESSOR TO TRUSTEE.** As noted in the Agreement, the Trustee intends to close the Bankruptcy Case prior to the completion of all obligations in the Agreement. If the Bankruptcy Case is re-opened to enable the performance of the executory obligations, the trustee of the re-opened Bankruptcy Case is bound by all terms of the Agreement.

19.    **NOTICES**. All notices hereunder shall be deemed given upon dispatch if in writing and delivered via email and U.S. Certified Mail, postage prepaid, to the following addresses:

To the Trustee:        Jeffrey I. Golden
                       Lobel Weiland Golden Friedman
                       LLP Center Tower
                       650 Town Center Dr., Ste. 950
                       Costa Mesa, CA 92626
                       Email: jgolden@lwgfllp.com

                       With copy to:

                       Ashley McDow
                       Michael T. Delaney
                       Baker & Hostetler LLP
                       11601 Wilshire Blvd., Ste. 1400
                       Los Angeles, CA 90025
                       Email: amcdow@bakerlaw.com
                              mdelaney@bakerlaw.com

11



To the Tuckers:    James Stang
                   Pachulski, Stang, Ziehl and Jones LLP
                   10100 Santa Monica
                   Boulevard, Suite 1300
                   Los Angeles, CA 90067
                   Email: jstang@pszjlaw.com

    A Party may change the designated recipient and/or address(es) for the provision of notice(s) under this Agreement by transmitting a notice of address or recipient change by the means specified in this Paragraph. Any address change shall be deemed effective upon receipt. Any notices transmittal prior to receipt of a notice of address or recipient change shall be deemed valid and effective.

Dated: February 9, 2017          By: _____
                                 Jeffrey I. Golden, Chapter 7 Trustee for Jeffrey
                                 Sumner Childs

Dated: February 9, 2017          By: _____
                                 Sean P. Tucker

Dated: February 9, 2017          By: _____
                                 Leslie A. Tucker

12

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA  90067

A true and correct copy of the foregoing document entitled: **NOTICE OF LODGMENT OF ORDER IN BANKRUPTCY CASE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) **February 9, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Julian K Bach    Julian@Jbachlaw.com, julianbach@sbcglobal.net
- Christopher L Blank    clblank@pacbell.net
- Michael T Delaney    mdelaney@bakerlaw.com, sgaeta@bakerlaw.com
- Roger F Friedman    rfriedman@rutan.com
- Roger F Friedman    rfriedman@rutan.com
- Jeffrey I Golden (TR)    ljones@wgllp.com, jig@trustesolutions.net;kadele@wgllp.com;lfisk@wgllp.com
- Jeffrey I Golden (TR)    ljones@wgllp.com, jig@trustesolutions.net;kadele@wgllp.com;lfisk@wgllp.com
- Nancy S Goldenberg    nancy.goldenberg@usdoj.gov
- David R Haberbush    dhaberbush@lbinsolvency.com, ahaberbush@lbinsolvency.com,abostic@lbinsolvency.com,vhaberbush@lbinsolvency.com,haberbush.assistant@gmail.com,mblake@lbinsolvency.com
- Vanessa M Haberbush    vhaberbush@lbinsolvency.com, dhaberbush@lbinsolvency.com,ahaberbush@lbinsolvency.com,abostic@lbinsolvency.com,haberbush.assistant@gmail.com,mblake@lbinsolvency.com
- Ashley M McDow    amcdow@bakerlaw.com, mdelaney@bakerlaw.com;sgaeta@bakerlaw.com;rojeda@bakerlaw.com;ffarivar@bakerlaw.com
- Penelope Parmes    penelope.parmes@troutmansanders.com, Vanessa.hudak@troutmansanders.com
- Leonard M Shulman    lshulman@shbllp.com
- Ramesh Singh    claims@recoverycorp.com
- James Stang    jstang@pszjlaw.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Michael A Wallin    mwallin@slaterhersey.com, mrivera@slaterhersey.com

☐ Service information continued on attached page

**1. SERVED BY UNITED STATES MAIL**: On (date) **February 9, 2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

C.B. Nanda
P.O. Box 1267
Anaheim, CA 92815

☐ Service information continued on attached page

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2012*

F 9021-1.2.BK.NOTICE.LODGMENT

DOCS_LA:303996.1 85443/001

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) **February 9, 2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA FEDEX**
Hon. M. Elaine Hammond
United States Bankruptcy Court
280 South First Street, Rm 3035/ Crtrm 3020
San Jose, CA 95113-3099

George B. Piggott
Law Offices of George B. Piggott
2603 Main Street, 9th Floor
Irvine, CA  92614
Email: gbpapc@aol.com
**VIA EMAIL AND U.S. MAIL**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 9, 2017 | Mary de Leon | /s/ Mary de Leon |
|---|---|---|
| Date | Printed Name | Signature |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**2005 Palo Verde Avenue, Ste. 119, Long Beach, CA 90815**

A true and correct copy of the foregoing document entitled (*specify*): <u>**CREDITOR C.B. NANDA'S OBJECTION TO PROPOSED FORM OF ORDER APPROVING SALE AND TRANSFER OF ASSETS TO SEAN TUCKER AND LESLIE TUCKER**</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) <u>February 15, 2017,</u> I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**Debtor:**
Jeffrey S. Childs
1139 Aviemor Terrace
Costa Mesa, CA 92627

Jeffrey Sumner Childs
1354 Morningside Drive
Laguna Beach, CA 92651

**Attorney for Debtor:**
Michael Jones, Esq.
M Jones & Associates, PC
505 N Tustin Avenue, Ste. 105
Santa Ana, CA 92705

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (<u>state method for each person or entity served</u>):  Pursuant to F.R. Civ.P. 5 and/or controlling LBR, on (*date*) <u>February 15, 2017,</u> I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**U.S. Bankruptcy Judge: Via Federal Express**
Honorable Mark S. Wallace
U.S. Bankruptcy Court
411 W. Fourth Street, Ste. 6135
Santa Ana, CA 92701

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 15, 2017 | George B. Piggott | |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

June 2012

**U.S. Trustee:**
United States Trustee
411 W. Fourth Street, Ste. 7160
Santa Ana, CA 92701

**Chapter 7 Trustee:**
Jeffrey I Golden (TR)
Weiland Golden LLP
P.O. Box 2470
Costa Mesa, CA 92628-2470

**Attorneys for Chapter 7 Trustee:**
Michael T Delaney, Esq.
Ashley M McDow, Esq.
Baker & Hostetler LLP
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025

**Attorneys for Sean Tucker and Leslie Tucker:**
James I. Stang
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd 13th Floor
Los Angeles, CA 90067

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**